IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PHILLIP MICHAEL LITTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:11-CV-218 CAN |
| | ) | |
| INDIANA DEPARTMENT OF | ) | |
| CORRECTIONS COMMISSIONER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This case began on May 20, 2011, when Phillip Michael Littler, a *pro se* prisoner, sued the Commissioner of the Indiana Department of Correction, the Director of the Westville Control Unit, and the Classification Director of the Indiana Department of Correction. The court screened the complaint pursuant to 28 U.S.C. § 1915A and granted him leave to proceed against the three defendants "in their individual capacities for damages on his Fourteenth Amendment due process claim that they transferred him to the WCU without affording him due process . . .." DE 4 at 9. Later, Littler was granted leave to amend to add a claim for injunctive relief. The essence of Littler's claim is that he was placed into Department-Wide Administrative Segregation (DWAS), a more restrictive confinement, without having had a Constitutionally required due process hearing.

After the conclusion of discovery and the denial of the defendant's motion for summary judgment, the case proceeded to a bench trial. However, two days before trial, the defendants conceded liability. They admitted that Littler "did not receive adequate

procedural due process when he was transferred into DWAS [and that his] procedural due process rights under the Fourteenth Amendment were violated when he was transferred into DWAS." DE 1 at 1. Thus, the issue at trial was one of damages. Four witnesses testified at trial: Sally Nowatzke, Robert Roose, Doug Barnes, and Littler. At the end of the trial, the court requested post-trial briefs – which the parties have filed.

## DAMAGES

With regard to the appropriate award of damages, the court will consider compensatory damages, nominal damages, punitive damages, injunctive relief, and a declaratory judgment.

### Compensatory Damages

Although Littler was denied due process, he did not suffer a physical injury. This precludes his recovery of any compensatory damages for any mental or emotional injuries because "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). As further explained by the Supreme Court in order to obtain compensatory damages, a plaintiff must demonstrate actual injury.

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents

> nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.

*Carey v. Piphus*, 435 U.S. 247, 266-267 (1978) (citation and footnote omitted). In *Carey*, several students were suspended from school without having received the due process to which they were entitled. The denial of due process entitled them to nominal damages.

However, in order to obtain compensatory damages, the students had to prove that they would not have been suspended if they had received due process. The same is true in this case. In order for Littler to recover compensatory damages, he must have proven at trial that his transfer was not justified and that if he had been provided with the due process to which he was entitled, he would not have been sent to DWAS.

"[A] point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage." *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation marks, brackets and citation omitted).

> Federal judges must always be circumspect in imposing their ideas about civilized and effective prison administration on state prison officials. The Constitution does not speak with precision to the issue of prison conditions (that is an understatement); federal judges know little about the management of prisons; managerial judgments generally are the province of other branches of government than the judicial; and it is unseemly for federal courts to tell a state how to run its prison system.

*Scarver v. Litscher*, 434 F.3d 972, 976-77 (7th Cir. 2006) (quotation marks and ellipsis omitted). Therefore the burden on Littler is quite high, and he has not carried that burden.

Rather, the evidence submitted at trial demonstrated that Littler's placement in DWAS was reasonable, and the court concludes that he would have been moved there even if he had received the due process hearing the Constitution requires. The evidence presented at trial shows, and Littler does dispute, that he was transferred to DWAS because of an issue involving his interaction with a female staff member. It would be wrong, however, to narrowly interpret this to mean that he was transferred merely to separate him from that staff member. That is not what the Inter-Facility transfer report states (Plaintiff's Exhibit 10 and 11). Additionally, as Littler himself points out, if that were the only objective, it could have been accomplished without placing him in department-wide segregation. What the report says is that Littler was transferred because of the "separatee status." That is to say, because he *needed* to be separated from her. Therefore, it was the circumstances surrounding the *need* for the separation that lead prison administrators to believe that he should be placed in DWAS.

At trial Littler testified that he was romantically involved with the staff member, but that she had spurned him. Though it is unclear exactly what happened between them, both his emotional testimony about those events and a letter that he wrote to her (DE 47-9) show that there were larger issues involved than merely the need to separate the two of them. In fact, at trial he testified that things were so serious and his emotions were so intense that he intended to commit "suicide by cop." That is to say, he intended to attack a guard and provoke a response that would result in his death. However, before he was able to implement this plan, he was sent to DWAS where heightened security measures apparently

prevented him from being able to do so. Though there is no indication that prison officials at the time had actual knowledge of those plans, their decision to transfer him to DWAS shows that they believed that he needed to be confined in a more restrictive environment. Moreover, their having done so clearly prevented a tragedy. Such judgment calls are within the broad discretion afforded prison administrators in deciding how to protect the inmates and staff in their prisons. Additionally, their concerns were further borne out by Littler's subsequent vow to escape and thinly veiled threat to thereafter physically injure his State trial court judge. DE 47-8. So too, their concerns about his fixation on the staff member were borne out by his requests for public records about her. (Plaintiff's Exhibit 12). Even now, Littler argues that she was not a real staff member, that she was not a real intern, that she should not have been doing the work that she was assigned, and that she should not have been in the facility. All of this misses the point which is the safety and security threats he posed (and poses) to the facility. Indeed, all of this supports the reasonableness of the defendants' decision to place him in DWAS before something more serious occurred. Under the circumstances, this court has no reason to conclude that it was improper to have placed Littler in DWAS or that he would not have been placed there if he had been afforded the due process hearing to which he was entitled. Consequently, he cannot be awarded compensatory damages.

Littler argues that having a separation order with a staff member is not one of the listed reasons for being sent to DWAS. However, pursuant to the IDOC policy in Appendix XVI-C, "Offenders selected for a Department-wide administrative segregation unit must

have exhibited extraordinary security concerns, such as . . ..": DE 47-16. The list that follows in that section of the State policy is not exclusive, it is descriptive. The listed items are merely some examples of "extraordinary security concerns."

> Prison administrators [are] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security [including] prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline.

*Whitley v. Albers*, 475 U.S. 312, 322 (1986) (quotation marks and citation omitted). Thus, given the facts presented, the defendants did not abuse their discretion when they decided that Littler posed an extraordinary security concern and needed to be separated from a staff member. There is no Constitutional obligation for prison administrators to wait for disaster before acting. As such, Littler has not demonstrated that his placement in DWAS was improper or that he would not have been sent there if he had been afforded a due process hearing.

## Nominal Damages

Although Littler is not entitled to compensatory damages, "*Carey* obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). The Defendants concede that Littler "is entitled to nominal damages in the amount of $1.00." DE 102 at 4. Therefore the court will award Littler $1.00 in nominal damages. *See Carey v Piphus,* 435 U.S. 247, 266-267 (1978) (The Supreme Court has held that nominal damages are not to exceed one dollar.)

Punitive Damages and Injunctive Relief

The defendants argue that Littler is not entitled to punitive damages or injunctive relief. Because his placement in DWAS was not improper, there is no basis for injunctive relief ordering his release from department-wide segregation. However, punitive damages are not based on whether it was appropriate to send him to DWAS, but rather on the process that was followed to send him there. Punitive damages are available in a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983, "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983), *see also Alexander v. Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007) (citing *Smith v. Wade*). Negligence is not enough. *Cf. Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) Unreasonableness is not enough. *Cf. Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even incompetence is not enough. *Cf. Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). What is required is an evil motive, an evil intent, reckless indifference, or callous indifference. But Littler has not proven that anyone acted with such motivations.

Littler was not afforded due process when he was sent to DWAS. The defendants have conceded that – albeit on the eve of trial. But none of the testimony at trial (nor any evidence in the record) supports an inference that anyone involved in his transfer participated because they bore him any personal animus or because they wanted to

injure him. Nor is there any evidence that anyone intentionally or even recklessly denied him a hearing. If all Littler needed to prove was that the defendants were sloppy and inattentive to the procedural requirements inherent in such transfers, he would have easily succeeded. But that is not the test. To obtain punitive damages, he needed to do much more than prove that they made an administrative mistake and botched his paperwork. But that is all that he has proven. Consequently, he cannot be awarded punitive damages.

## Declaratory Judgment

In his post-trial brief, Littler raises for the first time, a request for a declaratory judgment. The lateness of his request alone is reason enough to deny it. However, it would have been denied even if it had been timely raised because it is superfluous. *See Missouri v. Cuffley*, 112 F.3d 1332, 1335 (8th Cir. 1997) ("[A]n action for declaratory relief is merely a substitute for a more traditional action for damages or injunctive relief . . ..")). Here, Littler has won on the merits of his claim and he will receive nominal damages. To also add an additional declaration repeating that he won would be redundant. *See Habitat Educ. Ctr. v. United States Forest Serv.*, 607 F.3d 453, 460 (7th Cir. 2010) ("[A]warding nominal damages is a way of communicating an important result in many cases: that the plaintiff proved a violation of his rights but was unable to prove damages as a consequence of the violation . . . as in a declaratory-judgment proceeding . . .." Because a declaratory judgment is little more than an award of nominal damages

without the dollar, there is no basis for entering a declaratory judgment in addition to the nominal damages that he will be awarded.

MOTION TO AMEND

In open court, minutes before taking testimony at trial, Littler asked to amend his complaint to add defendants. Despite the extreme lateness of this request, he was granted leave to file a written motion explaining why he should be permitted to file an amended complaint. After trial, he filed that motion. Littler explains that he wants to add five defendants (Indiana State Prison Superintendent William Wilson, Internal Affairs Investigator William Lessner, Executive Assistant R.W. Roose, Executive Assistant Marlan Thatcher, and Executive Assistant Michael Osburn) because he now believes that they were also involved in his transfer to DWAS and that they collaborated with the current defendants. For the purpose of this opinion, the court accepts as true that all of the proposed defendants were personally involved in his transfer. However, adding them to this lawsuit would make no difference in its outcome. The current defendants have admitted liability, and Littler has won. He was denied due process, but he would have been placed in DWAS even if he had been afforded the due process to which he was entitled. Therefore he cannot get compensatory damages or injunctive relief no matter how many defendants are added to this case. Moreover, Littler has not plausibly alleged that anyone acted with malice. Therefore there is no basis to believe that he could obtain punitive damages against any of these new defendants either.

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). In sum, it would be futile to permit this amendment because it would not change the final result in this case, and "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).

Littler argues that his motion to amend was so late because he only found out about these defendants days before trial. This argument is irrelevant because the court permitted him to file the motion to amend and has considered it on the merits. Moreover, even if he had discovered the involvement of these defendants sooner, the result of this case (as previously explained) would not have been different.

Littler argues that the documents provided to him days before trial had been withheld from him during discovery. This allegation is simply wrong. Littler requested copies of various policies and also copies of various forms listed in Policy 02-01-111. DE 37. In response he was told that he had either already been provided with copies of the policies or that no policy with the requested number existed. DE 43. He was also given blank copies of the forms he requested. DE 43-1. His request gives no indication that he was asking for completed copies that were used in his case. Rather, he merely asked for copies of the forms mentioned in the policy. Such forms would necessarily be blank. Moreover, he has previously given no indication that these blank forms were unresponsive to his request even though he has on numerous other occasions sought to compel the production of various documents in this case. *See* DE 29, 41, 54, 61, and 91. Based on the plain language of his request and his silence after receiving the blank forms, there is no merit to Littler's argument that any documents were improperly withheld from him in discovery.

## CONCLUSION

Because Littler is being awarded nominal damages, he is also entitled to costs. In order for the court to determine what his cost were, he needs to submit a bill of costs. That is to say, he must submit to the court a list of the money he spent, or debts he incurred, to bring this lawsuit.

For the foregoing reasons, the court:

(1) **DENIES** the motion to amend the complaint (DE 99);

(2) **DIRECTS** the clerk to enter Final Judgment in favor the Plaintiff, Phillip Michael Littler, and against the Defendants, the Commissioner of the Indiana Department of Correction, the Director of the Westville Control Unit, and the Classification Director of the Indiana Department of Correction;

(3) **AWARDS** the Plaintiff, Phillip Michael Littler, nominal damages in the amount of $1.00;

(4) **ORDERS** the Defendants to deposit $1.00 into the inmate trust fund account of Phillip Michael Littler by September 12, 2013;

(5) **ORDERS** the Defendants to provide this court with proof that $1.00 has been deposited into Phillip Michael Littler's account by September 19, 2013; and

(6) **GRANTS** Phillip Michael Littler, until September 19, 2013, to submit his bill of costs.

SO ORDERED.

Dated this 28th Day of August, 2013.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge